## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

United States of America

v.

Ryan Vallee

1:25-cr-00015-SE-AJ

### DEFENDANT'S SENTENCING MEMORANDUM

The Defendant, Ryan Vallee, by and through counsel, hereby submits this Memorandum in support of his request that the Court vary from the Sentencing Guidelines and sentence him to a term of 60 months followed by a period of 5 years of supervised release. Supervised release conditions should include a sex offender group treatment program, as well as computer restrictions, and periodic polygraph testing as a treatment tool to ensure that the defendant is in compliance with the requirements of his supervision and treatment program. This sentence is appropriate given his remorse and his willingness to engage in treatment.

I.  Introduction

On March 18, 2025, Ryan Vallee was named in a one-count Information, charging him with possession of child pornography in violation of 18 U.S.C. 2252A(a)(5)(B) and (b)(2). On April 24, 2025, Mr. Vallee pleaded guilty to this offense.

II.  The Plea Agreement

The parties agree that the Government will request a sentence within the applicable guidelines sentencing range. The parties further agree that the following Specific Offense Characteristics apply:  2G2.2(b)(2) (material involved a prepubescent minor), 2G2.2(b)(5) (pattern of activity involving the sexual abuse or exploitation of a minor), 2G2.2(b)(6)

(offense involved the use of a computer), and 2G2.2(b)(7)(D) (offense involved 600 or more images). The defendant reserves the right to seek a downward variance on the basis, *inter alia*, that the aforementioned specific offense characteristics, though they apply, should not be given the weight attributed to them in the Guidelines.

III.   <u>Guideline Calculations</u>

   **a. The Defendant's Calculation**

The applicable guideline is found at U.S.S.G. § 2G2.2. Mr. Vallee starts at an offense level of 18, pursuant to §2G2.2(a)(1). The Specific Offense Characteristics referred to in the plea agreement act as follows:

- §2G2.2(b)(2), adds a 2-level increase for the material involving a prepubescent minor who had not attained the age of 12 years;
- §2G2.2(b)(5) adds a 5-level increase, because the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor as a result of his sexual exploitation of multiple minors in his previous federal offense;
- §2G2.2(b)(6) adds a 2-level increase because the offense involved the use of a computer; and,
- §2G2.2(b)(7)(D) adds a 5-level increase because the offense involved 600 or more images. This calculation relies on the assumption that each video counts as 75 images. *See* Application Note 6(C)(ii) to U.S.S.G. §2G2.2.

Thus, the Adjusted Offense Level is 32.

The offense level is reduced by 3 points for acceptance of responsibility, making the Total Offense Level 29. Applying a CHC of II yields an advisory guideline sentencing range (GSR) of 97 - 121 months.

As stated above, this total offense level includes a two-level enhancement because the offense involved a computer and a five-level enhancement for the number of images. Mr. Vallee argues below in his motion for a variance that these enhancements, while they apply according to the guidelines, should not be given significant weight by the Court.

### b. The Government and the Probation Office Calculation

Both the Government and the Probation Office urge the Court to apply the Cross Reference at U.S.S.G. §2G2.2(c). This provision directs one to U.S.S.G. §2G2.1 if the "offense involved causing ... a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct." This cross reference is not applicable here. Indeed, the parties did not identify it as applicable in any plea negotiations, and it is not referenced in the plea agreement.

The Government and Probation argue that the cross reference is applicable because the KiK account connected to Mr. Vallee contained a photo of one of the alleged victims from the 15-cr-115-PB case. Mr. Vallee has already pleaded guilty in that case and was sentenced in that case. The image in question was referred in the PSR in that case (15-cr-00115-PB, Doc 68 at ¶39) and the second superseding indictment (15-cr-00115-PB, Doc 42 ¶62). That circumstances surrounding the creation of that image are not part of "the offense" in this case. He did not plead guilty to knowingly possessing or creating that image in this case and it is not referenced in the plea agreement. Accordingly, U.S.S.G. §2G2.1 should not be used, and §2G2.2 is the appropriate provision.

In the addendum to the PSR (Doc 9-1), the probation officer notes that Application Note 7 to §2G2.2 directs that the cross reference "is to be construed broadly and includes all instances where the offense involved ... persuading, inducing enticing, coercing ...". The

3

probation officer adds emphasis to the words "all instances" in his response. The defense submits that the appropriate words to emphasize in the note are "where the offense involved". This offense did not involve any charging language or admissions to any coercion. It is a possession case. The creation of the image in question occurred more than ten years ago. Mr. Vallee pleaded guilty at that time and was punished by a term of imprisonment which is reflected in his criminal history.

In the PSR addendum the probation officer argues further that the §2G2.1 guideline is appropriate because the image qualifies as "expanded relevant conduct" as described by U.S.S.G. §1B1.3(a)(2) and U.S.S.G. §3D1.2(d). This argument is also unavailing.

To begin the relevant conduct analysis, one starts at U.S.S.G. §1B1.3(a)(1)(A). It states that all acts "committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" shall be considered. However, the section contains a limiting provision which states that the acts must have "occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." There is no factual basis for any of these findings. However, this is a necessary step before one proceeds to U.S.S.G. §1B1.3(a)(2). Thus, it ends the inquiry.

Even if one applies U.S.S.G. §1B1.3(a)(2), it does not allow the cross refence to come into play. U.S.S.G. §1B1.3(a)(2) applies only when the purported relevant conduct is "part of the same course of conduct or common scheme or plan as the offense of conviction." There is no factual basis for that finding here. Therefore, the Court cannot proceed to U.S.S.G. §3D1.2(d) because the requirements of U.S.S.G. §1B1.3(a)(2) are not satisfied. Indeed, Application Note 5(C) to U.S.S.G. §1B1.3(a)(2) makes this clear. It states: "[f]or the

4

purposes of subsection (a)(2), offense conduct associated with a sentence that was imposed prior to the acts or omissions constituting the instant federal offense (the offense of conviction) is not considered as part of the same course of conduct or common scheme or plan as the offense of conviction." That is the exact factual scenario here.

However, if one does proceed to U.S.S.G. §3D1.2(d) it does not apply because the Court cannot make a finding, as it must, that "the offense behavior is ongoing or continuous in nature …. ." That is not the case here. As noted above, the image was created more than ten years ago. Mr. Vallee pleaded guilty to the creation of that image and was punished for it.

IV.     Nature and Circumstances of the Offense

Mr. Vallee takes no issue with the description of the offense as set forth in the Presentence Investigation Report.

V.      History and Characteristics of the Defendant

After calculating the GSR, the Court should weigh the factors set forth in 18 U.S.C. 3553(a) before determining the sentence. As the First Circuit explained in *United States v. Martin*, 520 F.3d 87 (1st Cir 2008):

> This sequencing necessitates a case-by-case approach, the hallmark of which is flexibility. In the last analysis, a sentencing court should not consider itself constrained by the guidelines to the extent that there are sound, case-specific reasons for deviating from them. Nor should a sentencing court operate in the belief that substantial variances from the guidelines are always beyond the pale. Rather, the court should "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." [*United States v.*] *Gall*, 128 S. Ct. 586 (2008) at 598.
>
> *Id.* 520 F.3d at 91.

Mr. Vallee is 31 years old. He was born and raised in Belmont, New Hampshire. His parents were never married. He is currently estranged from his birth father. He was raised

primarily by his mother, Sherry Carlberg, who is a strong source of support for him up to the present day. He has two half-siblings. His brother Trevor has severe autism and resides at the Spaulding Youth Center in Tilton. His sister Amy Richards lives in Gilford, NH with her two sons. Ryan does not currently have contact with her.

Although Ryan contends that his childhood was "good," his mother paints a different picture. *See* Exhibit 'A'. In her letter to the Court, she describes how his grandparents consistently and cruelly favored his sister over Ryan. He was also bullied daily in school. His close relationship with his father deteriorated after his father came back from service in Iraq.

Nonetheless, Ms. Carlberg says that Ryan is caring and compassionate. She gives examples of how he cared for his grandparents, his sister, a neighbor and Sherry Carlberg herself. Despite this difficult upbringing and his struggles with autism, Ryan is, as his mother says, "resilient." He is also remorseful for his conduct that brought him to this stage.

Regarding the risk of recidivism, with the appropriate monitoring provided by probation, this should not be a concern.

Mr. Vallee has a plan for his release. He will stay with his mother. He will obtain employment, as he has always worked since he has been old enough to do so. Based on prior evaluation, it appears he is amenable to treatment. It is unfortunate that he and his most recent treatment provider did not have a productive relationship. The evaluations also indicate that he is not at risk for any sexually assaultive behavior.

Mr. Vallee requests that the Court sentence him to 60 months of imprisonment, followed by 5 years of supervised release. This sentence is sufficient, but not greater than

6

necessary, to comply with the statutory purposes of sentencing.  *See* 18 U.S.C. § 3553(a). The Court should adopt his sentencing proposal.

    VI.    <u>Motion for a Variance</u>

The particular circumstances of Mr. Vallee's background, set forth in Section V above, establish that a variance is appropriate.   In addition, the unique nature of the child pornography guidelines supports a variance in this case.

While the Guidelines must still be properly calculated and the court must consider the advisory Guidelines range, the court may not presume this advisory range is reasonable. *United States v. Stone*, 575 F.3d 83, 94 (1st Cir. 2009). The advisory Guidelines range now serves as merely an initial benchmark for sentencing, which is ultimately considered along with other 18 U.S.C. §3553(a) factors. *See Rita v. United States*, 551 U.S. 338 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007); *Gall v. United States*, 552 U.S. 38 (2007).

U.S.S.G. §2G2.2 of the Sentencing Guidelines, "is fundamentally different from most and that, unless applied with great care, can lead to unreasonable sentences that are inconsistent with what §3553 requires." *United States v. Dorvee*, 616 F.3d 174, 184 (2d Cir. 2010); *see also United States v. Stone*, 575 F.3d 83, 97(1st Cir. 2009) ("[W]e wish to express our view that [§2G.2 is] harsher than necessary . . . [F]irst-offender sentences of this duration are usually reserved for crimes of violence and the like."); *United States v. Grober*, 624 F.3d 592 (3d Cir. 2010) (finding district court provided compelling explanation for policy concerns and justification for sentence outside range).

Because the child pornography guideline offense levels and enhancements were directed by Congress and were not the result of "an empirical approach based on data about past sentencing practices," the resulting Guideline ranges can yield unreasonably

7

high sentences in otherwise "run-of-the-mill cases." *United States v. Dorvee*, 616 F.3d at 186-87. *See also United States v. Tutty*, 612 F.3d 128, 132-33 (2d Cir. 2010) (suggesting that the guidelines can generate "unreasonable results" if not "carefully applied.").

The above concern expressed by the Circuit Courts was validated by the Sentencing Commission in 2012. That year, the United States Sentencing Commission examined child pornography sentencing outcomes. *See* U.S. Sentencing Comm'n, *Report to the Congress: Federal Child Pornography Offenses*, ii-iii (2012) ("The Report"). The Commission compiled The Report in part to address the increasing rate of below-guideline sentences for offenders sentenced under §2G2.2 and because the sentencing data "indicate[d] that a growing number of courts believe[d] that the current sentencing scheme in non-production offenses [was] overly severe for some offenders." *Id*. at ii. The Commission concluded that the non-production child pornography sentencing scheme should be revised to account for, *inter alia*, technological changes in offense conduct. *Id*. at 329-30. Congress has not acted on those recommendations and the guideline enhancements remain intact.

In June 2021, the United States Sentencing Commission published its study concerning Federal Sentencing of Child Pornography: Non-Production Offenses. *See* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf (last visited August 6, 2025) ("2021 Report"). This publication served to update and expand the U.S. Sentencing Commission's 2012 Child Pornography Report. *Id*. at 2-3. The 2021 Report recognized that the Congress did not take action on the recommendations made in the 2012 Report and noted that judges continue to sentence non-production offenders below the guideline range. *Id*.

The 2021 Report produced key findings which once again underscore how the guideline enhancements have not evolved with the current technology and have "become so ubiquitous that they now apply in the vast majority of cases sentenced under [U.S.S.G.] 2G2.2." *Id*. at 4. For example, "in fiscal year 2019, over 95 per cent of non-production child pornography offenders received enhancements for use of a computer and for the age of the victim (images depicting victims under the age of 12)". *Id*. Enhancements for images depicting sadistic conduct or abuse of an infant or toddler were applied in 84% of cases and an enhancement for having 600 or more images was applied in 77.2% of cases. *Id*. (noting that non-production offenses involved median number of 4,265 images).

Further evidence that a variance is warranted can be found at the "Judiciary Sentencing Information" (JSIN) website, which published by the United States Sentencing Commission. This site compiles sentencing data based on the offense charged, the total offense level and the criminal history category.  It can be found at https://jsin.ussc.gov/analytics/saw.dll?Dashboard (last visited August 6, 2025).

The JSIN website reveals the following with respect to Mr. Vallee's case.  During the last five fiscal years (FY2020-2024), there were 10 defendants whose primary guideline was §2G2.2, with a Final Offense Level of 29 and a Criminal History Category of II, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 10 defendants (100%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 103 month(s) and the median length of imprisonment imposed was 78 month(s).  Importantly, the data also reflects that 55% of these defendants received a downward departure.

Specifically, Mr. Vallee takes issue with the computer enhancement 2-level increase pursuant to U.S.S.G. §2G2.2(b)(6) as virtually every single CSAM case today involves the use of a computer.

Additionally, application note 6(B)(ii) to U.S.S.G. §2G2.2 which directs that each video be counted as 75 images has been called into question by at least one District Court. That court held that the text of the Guideline enhancement, U.S.S.G. § 2G2.2 (b) (7), is not genuinely ambiguous and, therefore, that there is no reason to rely on the Commentary. Alternatively, it held that if the Guideline is considered to be ambiguous, the Commentary interpreting that text is unreasonable.. *See United States v. Roberts*, 2025 U.S. Dist. LEXIS 114613, *30; __ F.Supp.3d __, (E.D.Va 2025)("because the Guideline (image enhancement) uses the term 'image,' which is the same term used in the statute when describing a video or picture as an image, *compare* U.S.S.G. § 2G2.2(b) (7), *with* 18 U.S.C. § 2256(5), (8), the Court reads the statute as defining 'image' in the image enhancement to mean one 'picture,' one 'photograph,' one 'film,' and one 'video' of child pornography.").

According to the discovery, Mr. Vallee possessed 176 images and 18 videos. If they are each counted as one "image" then the total number of images is 194, which yields a 3-level increase. If one also removes the 2-level enhancement for use of a computer, the Total Offense Level is reduced to 25. At Criminal History Level 2 this yields a GSR of 63 – 78 months.

VII.    Other Considerations

With respect to restitution, Mr. Vallee has agreed not to contest requests for restitution that are supported by documentation and are less than or equal to $10,000.00. There is one such request. Ultimately, the determination of restitution lies within the discretion of

the Court. Mr. Vallee requests that the Court considers his indigency and assess the mandatory minimum of $3,000.00 in this case. In addition, because of his indigency, Mr. Vallee requests that the Court not assess additional assessments pursuant to either 18 U.S.C. § 3014 or 18 U.S.C. § 2259A.

The defendant respectfully requests that the Court recommend that he be designated to FMC Devens in Ayer, Massachusetts. If designated to FMC Devens Mr. Vallee will be allowed to participate in the Sex Offender Management Program (SOMP), the primary goal of which is to help sexual offenders manage their behavior in order to reduce sexual re-offending. The program consists of several components, including sex offender education and treatment, as well as psychiatric treatment, and community release planning.

VIII.   <u>Requested Relief</u>

Wherefore, Ryan Vallee, through counsel, requests that the Court sentence him as requested in this memorandum, and to such other terms as it deems just and proper.

Respectfully submitted,
RYAN VALLEE,
By and through his counsel,

<u>/s/ John P. Newman</u>
John P. Newman, Esq.
NHBA No.:  8820
Newman Law Office, PLLC
814 Elm Street, Suite 403
Manchester, NH 03101
(603) 935-5603

<u>CERTIFICATE OF SERVICE</u>

I, John P. Newman, hereby certify that a copy of the foregoing Memorandum has been forwarded August 8, 2025, to Anna Krasinski, Esq., at the Office of the United States Attorney, James C. Cleveland Federal Building, 53 Pleasant Street, 4th Floor, Concord, NH 03301.

<u>/s/ John P. Newman</u>
John P. Newman